UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE** | * | **CIVIL ACTION** |
| **INSURANCE COMPANY** | * | |
| | * | **NO. 08-5166** |
| **VERSUS** | * | |
| | * | **SECTION "L"(3)** |
| **FLUOR ENTERPRISES, INC. ET AL.** | * | |

**ORDER & REASONS**

Before the Court is Plaintiff Liberty Mutual's motion for summary judgment. (Rec. Doc. 284). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

**I.   BACKGROUND**

This case arises out of a fire that occurred in a FEMA trailer. On August 25, 2006, a flash fire broke out in Jean Joseph's newly leased FEMA trailer while Ms. Joseph and her friend, Bernard Mabry II, were inside. Ms. Joseph was severely burned, and Mr. Mabry was killed. Multiple lawsuits (the "Joseph lawsuits" and the "Mabry lawsuits") were subsequently filed in Orleans Parish Civil District Court. The defendants in these suits included Fluor Enterprises, Inc. ("Fluor"), which had contracted with FEMA to supply the trailers; Keith McLin ("McLin"), an employee of Fluor's subsidiary who had performed the lease-in of the trailer to Ms. Joseph; and MMR Constructors, Inc. ("MMR"), the company with which Fluor had subcontracted to haul and install the trailers. The plaintiffs alleged that employees of Fluor and/or MMR had failed to turn off the gas stove inside the trailer and had failed to ensure the proper functioning of

1

the trailer's liquid propane detector before turning the trailer over to Ms. Joseph.

At the time of the fire, Fluor was insured by various carriers. It had a $2 million primary policy from Continental Casualty Company; a first excess policy of $5 million from Defendant Westchester Fire Insurance Company ("Westchester"); a second excess policy of $3 million from Defendant Great American Assurance Company ("Great American"); and a third excess policy of $10 million from former defendant Endurance American Specialty Insurance Company ("Endurance").[1] In other words, Continental Casualty Company was responsible for the first $2 million of Fluor's liability, Westchester was responsible above that $2 million up to $7 million, Great American was responsible above $7 million up to $10 million, and Endurance was responsible above $10 million up to $20 million. Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") was the primary and excess insurer of MMR at the time of the fire.[2] The primary policy was for $1 million and the excess policy was for an additional $19 million.

The Joseph and Mabry lawsuits were ultimately resolved out of court. The Joseph lawsuit settled for $10 million. Continental Casualty Company contributed its policy limit of $2 million, Great American contributed $3 million, and Liberty Mutual contributed $5 million. Although Liberty Mutual waived its right to recover $2 million of its total payment of $5

---

[1] Plaintiff Liberty Mutual Insurance Company and former defendant Endurance moved for partial dismissal after resolving their claims out of court, and this Court granted the motion. (Rec. Docs. 308, 309).

[2] At the time of the original lawsuits, Fluor also sought coverage under Liberty Mutual under two different theories: either that Fluor was an additional insured under MMR's policy, or that Liberty Mutual owed coverage for MMR's promise to defend and indemnify Fluor in the subcontract between Fluor and MMR. However, as noted below, the Court later found that neither of these theories was accurate.

million, the parties otherwise reserved at least some of their rights to recover from one another.[3] (Joseph Settlement Agreement, Ex. J to Pl.'s Mot. Summ. J., Rec. Doc. 284-11 at 1). The Mabry lawsuits settled for a total of $2.75 million. Liberty Mutual and Westchester each contributed $1.375 million, and again, the parties reserved certain rights to recover from the others. The parties executed a formal Receipt and Release Agreement encompassing both settlements. (Receipt and Release Agreement, Ex. K to Pl.'s Mot. Summ. J., Rec. Doc. 284-12). Within that agreement, Fluor assigned to Liberty Mutual its claim against Westchester, Great American, and Endurance "for indemnification for payments made by Liberty Mutual in the Joseph Settlement and in the Mabry Settlements." *Id.* at ¶¶ 3(D)(4).

While the Joseph and Mabry lawsuits were still pending, Liberty Mutual brought this suit for declaratory relief against Westchester, Great American, and other defendants who have since been dismissed from the case. Liberty Mutual seeks to recover the $4.375 million that it paid to settle the Joseph and Mabry lawsuits. (4th Supp. Am. Compl., Rec. Doc. 149 at 16-17). Westchester and Great American have also filed counterclaims for their portions of the settlement payments. (Rec. Docs. 51, 87).

A trial has already been held on two critical issues in this case: whether MMR owes indemnity to Fluor pursuant to the contract between those parties, and whether Fluor is covered as an additional insured under MMR's excess insurance policy. On February 17, 2012, a different section of this Court issued an Order and Reasons answering both questions in the negative. (Rec. Doc. 267). The Court found that two different events caused the fire. First, the

---

[3] There is currently some dispute among the remaining parties over which rights were reserved.

3

Court found that gas had accumulated in the trailer because "someone turned on the gas knob on the stove and failed to turn it off," *id.* at 15, and that "the gas was left on for a few days before the fire," *id.* at 16.  Second, the Court found that the liquid propane detector in the trailer did not alarm, despite the fact that a properly functioning detector would have done so in similar circumstances.  *Id.* at 18-20.  Nonetheless, the Court found that MMR was not required to indemnify Fluor because MMR was not contractually required to test the liquid propane detector; and furthermore, even if such testing had been required, the Court found that any failure to perform the test did not cause Ms. Joseph's and Mr. Mabry's injuries.  *Id.* at 27-28.  The Court then examined the contracts governing Fluor's relationship with MMR and MMR's insurance policy with Liberty Mutual.  The Court found that the fire did not arise out of MMR's "work" and therefore, Fluor was not covered under MMR's insurance policy.  *Id.* at 34-35.

## II.   PRESENT MOTION

Liberty Mutual submits this motion for summary judgment (Rec. Doc. 284) in accordance with a scheduling order (Rec. Doc. 282) issued after the Phase One Trial.[4]  Liberty Mutual argues that because of the findings at the Phase One Trial that MMR was not required to indemnify or cover Fluor for the fire, it is now entitled to reimbursement from Great American and Westchester for the portion of the settlement payments as to which it did not waive recovery. Liberty Mutual argues that Fluor and McLin are entitled to indemnity from Great American and Westchester, and that Liberty Mutual is subrogated to Fluor and McLin's contractual rights

---

[4]Because Liberty Mutual's motion was submitted pursuant to that order, which required Liberty Mutual to "file a motion to resolve all outstanding issues," *id.*, the Court rejects Westchester and Great American's argument that Liberty Mutual should not be permitted to file a motion for summary judgment at this time.

against those parties.[5]

In opposition to Liberty Mutual's motion, Great American and Westchester raise several arguments. Primarily, they argue that Liberty Mutual has no right to recover from them, both because Fluor has no claim for indemnification against them, and because Liberty Mutual's subrogation of Fluor's rights does not include such a claim. Furthermore, Great American and Westchester argue, *inter alia*, that they cannot be liable because there has been no finding that Fluor or McLin are at fault, and that Liberty Mutual paid to settle claims against MMR as well as against Fluor and McLin, so it cannot be entitled to recover the entirety of its contributions to the settlement payments.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate if the moving party can show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the

---

[5]Alternatively, Liberty Mutual argues that it can recover based on unjust enrichment. *See* La. Civ. Code art. 2298. However, Westchester and Great American correctly point out that under Louisiana law, there can be no recovery for unjust enrichment where there is a contract in place. *See*, *e.g.*, *Sam Staub Enterprises, Inc. v. Chapital*, 88 So.3d 690, 695 (La. Ct. App. 2012). Given the presence of contracts in this case, summary judgment cannot be granted to Liberty Mutual on this basis.

mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Id*. at 255.

**B.     Analysis**

Liberty Mutual's main argument in favor of summary judgment is that it is entitled to recover its portion of the settlement payments from Great American and Westchester based on subrogation of Fluor's claims for indemnification from these parties. Liberty Mutual argues that Westchester and Great American owed indemnity to Fluor and McLin for the Joseph and Mabry lawsuits, and that Liberty Mutual can step into Fluor's shoes through subrogation.

**1.     Indemnity**

Liberty Mutual argues that if Fluor and McLin had made the settlement payments themselves, they could indisputably recover those payments from their insurers. In support of this contention, Liberty Mutual cites a three-part test for whether indemnification is owed by an insurer: (1) the presence of insurance contracts covering the relevant claims, (2) potential liability of the insured for those claims, and (3) reasonableness of the settlement payments. *See, e.g.*, *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1216-17 & n.12 (5th Cir. 1986). Liberty Mutual argues that all three elements are clearly met in this case. First, both Great American's and Westchester's policies cover Fluor, its subsidiaries, and their employees, meaning that both McLin and Fluor were covered. Second, Liberty Mutual argues that both Fluor and McLin faced

potential liability for the fire, particularly given the Court's finding at trial that one cause of the fire was that someone had left the gas on.  Third, Liberty Mutual argues that both settlement payments were eminently reasonable given the huge potential liability that Fluor and McLin faced at trial.

Westchester and Great American respond by emphasizing that no court has ever specifically held that Fluor and McLin were at fault for the accident.  They argue that both of their policies provide that they will pay only sums for which the insured has become legally responsible due to "liability imposed by law."  (Westchester Policy, Ex. M to Pl.'s Mot. Summ. J., Rec. Doc. 284-14 at 28; Great American Policy, Ex. N to Pl.'s Mot. Summ. J., Rec. Doc. 284-15 at 8).  In this case, Westchester and Great American argue that there has been no finding of "liability imposed by law," so their coverage has not been triggered.  Furthermore, Westchester and Great American argue that the *Fontenot* line of cases does not apply in this case because Fluor and McLin did not themselves make the payments for which Liberty Mutual now claims indemnity.

Westchester and Great American's argument with respect to "liability imposed by law" is misleading and incorrect.  In this case, Westchester and Great American were helping to negotiate settlements on behalf of their two insured parties.  This scenario is specifically outlined in the insurance policy, and under those provisions, the insurers agree to pay for such settlements up to the applicable policy limit.  (Westchester Policy, Ex. M to Pl.'s Mot. Summ. J., Rec. Doc. 284-14 at 36-37; Great American Policy, Ex. N to Pl.'s Mot. Summ. J., Rec. Doc. 284-15 at 17-

18).[6]  Surely, if Fluor and McLin had paid for whatever portion of the settlement was actually covered by Westchester or Great American's insurance policy, they would have a right to seek indemnification for that payment.  Furthermore, Westchester and Great American cannot argue that *Fontenot* does not apply simply because Fluor and McLin did not pay, since Liberty Mutual is arguing that it was assigned Fluor and McLin's right to recover.  With respect to this part of Liberty Mutual's argument, it is clear that *Fontenot* applies and its requirements have been met.

### 2.   Allocation

Clearly, if Liberty Mutual paid to settle claims against MMR, its own insured, there would be no possibility of subrogation to Fluor and McLin's right to indemnity.  Therefore, having established that Westchester and Great American would owe indemnity to Fluor and McLin if they had made payments, Liberty Mutual proceeds to argue that it made payments to settle claims against Fluor and McLin only.

#### a.   Mabry Lawsuits

Liberty Mutual contends that with respect to the settlement of the Mabry lawsuits, the Receipt and Release Agreement is clear that the payments were made to settle claims against Fluor only.  In support of this argument, Liberty Mutual cites two different portions of the Receipt and Release Agreement.  One states the parties' intention "to enter into a compromise settlement of the plaintiffs' claims in the two Mabry Lawsuits against Fluor."  (Ex. K to Pl.'s Mot. Summ. J., Rec. Doc. 284-12 at 3).  The other states that Liberty Mutual and Westchester would each contribute $1.375 million "to settle the plaintiffs' claims against Fluor."  *Id.* at ¶ 2.

---

[6]Furthermore, the terms of the policies do not appear to require liability to be "imposed by law" *by a court*.  Accordingly, "liability imposed by law" by a settlement contract should be sufficient to trigger coverage.

Westchester and Great American respond that Liberty Mutual paid to settle the claims against MMR as well.  As evidence, they point to the agreements executed by the Mabry plaintiffs, both of which provide that the plaintiffs' claims against MMR will be dropped.  (Ex. H to Def.'s Opp. to Pl.'s Mot. Summ. J., Rec. Doc. 304-1 at 67-75).  Thus, Westchester and Great American argue that because the agreements do not specifically allocate payments to be on behalf of Fluor or MMR, Liberty Mutual's payment must be construed to have been on behalf of both entities.  Furthermore, one of these agreements—the one governing $2.5 million of the $2.75 million total paid to settle the Mabry lawsuits—was executed after the agreement among the insurers.

Liberty Mutual replies that the fact that MMR was released by the plaintiffs does not necessarily mean that Liberty Mutual paid the funds on MMR's behalf.  Liberty Mutual argues that the Receipt and Release Agreement—which was executed among the insurers—should be the controlling agreement on the issue of allocation.  Liberty Mutual cites *Certain Underwriters at Lloyd's, London v. Oryx Energy Co.*, 203 F.3d 898 (5th Cir. 2000), for the proposition that "clear allocation language contained in a settlement agreement between insurer and insured [is] controlling, and the insurer [can]not re-litigate the allocation issue to recoup a portion of its settlement payments from the insured."  (Pl.'s Reply, Rec. Doc. 307 at 9).

The Receipt and Release Agreement is clear in stating that the payments were to be made to settle claims against Fluor.  Westchester and Great American suggest that this agreement was amended by the subsequent release of Vernadine Mabry.  However, the Receipt and Release Agreement among the insurers clearly provides: "No part or provision of this Agreement may be changed . . . except by an instrument in writing signed by the party against whom

9

enforcement . . . is sought." (Ex. K to Pl.'s Mot. Summ. J., Rec. Doc. 284-12 at ¶ 14). Based on the version submitted by Westchester and Great American, it appears to the Court that Liberty Mutual did not sign the release cited by Defendants, which is in the form of a declaration by Vernadine Mabry and appears to be signed by that party only. Accordingly, the Court agrees with Liberty Mutual that its payments in the Mabry settlement were made on behalf of Fluor only.

### b. Joseph Lawsuits

With respect to the Joseph lawsuits, the settlement agreement among the insurers states that the settlement includes "any and all claims on behalf of Fluor and/or MMR Group, Inc." (Ex. J to Pl.'s Mot. Summ. J., Rec. Doc. 284-11 at 1). Liberty Mutual argues that this provision is ambiguous, and submits extrinsic evidence suggesting that the parties intended to settle claims against Fluor and McLin only. Westchester and Great American respond that this provision, along with another stating that Liberty Mutual would fund the settlement "as the primary and excess carrier for MMR, and as the alleged additional insurer of Fluor," establishes that Liberty Mutual was paying on behalf of both parties.

The Court agrees that the terms of the Joseph settlement agreement are ambiguous with respect to the issue of allocation. Although another section of this Court has since determined that MMR did not owe indemnity to Fluor—and, therefore, that Liberty Mutual was not required to reimburse Fluor's insurers for their portions of the settlement payments—that issue is not entirely relevant to whether Liberty Mutual was paying to settle the claims against Fluor and McLin or the claims against MMR.

The parties have pointed to various extrinsic evidence in support of their positions.

Liberty Mutual first submits two letters written by counsel at the time of the settlement negotiations. In one letter, counsel for Fluor and McLin states: "Get the Joseph portion of this case against Fluor and Keith McLin settled – now." (Ex. G to Pl.'s Mot. Summ. J., Rec. Doc. 284-8 at 2). Liberty Mutual also submits a letter from Fluor and McLin's counsel to counsel for the Joseph plaintiffs stating acceptance of the $10 million settlement offer "[o]n behalf of Fluor Enterprises, Inc., Keith McLin and their respective insurers." (Ex. H to Pl.'s Mot. Summ. J., Rec. Doc. 284-9 at 1). Additionally, Liberty Mutual submits an affidavit from its claims adjuster who handled the Joseph lawsuit stating that the settlement was paid on behalf of Fluor and McLin only. (Ex. I to Pl.'s Mot. Summ. J., Rec. Doc. 284-10 at ¶ 5).

Westchester and Great American respond that the first letter was sent before the insurers signed the settlement agreement, so the latter should be controlling. With respect to the second letter, they point out that in a later paragraph, that letter acknowledges that the claims against MMR were being settled in addition to the claims against Fluor and McLin. (Ex. H to Pl.'s Mot. Summ. J., Rec. Doc. 284-8 at 1). Furthermore, Westchester and Great American submit affidavits from Fluor and McLin's counsel stating that Liberty Mutual's counsel had "made it clear that Liberty Mutual would contribute funds . . . only if MMR was included in the releases . . . and the dismissals," and that the parties agreed not to include any allocation language because "that issue would be determined in the Federal Court coverage suit." (Ex. I, J to Def.'s Opp., Rec. Doc. 304-1 at 77, 78, 80).

Finally, even assuming that the Court does find that Liberty Mutual paid in part to settle claims against MMR, the parties disagree as to what percentages of allocation should apply. Liberty Mutual argues that since there were three parties—Fluor, McLin, and MMR—only one-

11

third of its payment was on MMR's behalf.  Westchester and Great American argue that a full 50% of Liberty Mutual's payment was on MMR's behalf.

At this time, the Court cannot say that there is no genuine issue of material fact with respect to the allocation issue.  The language of the agreement is ambiguous, and the parties have submitted conflicting extrinsic evidence.  Given the fact that Liberty Mutual expressly waived its right to recover only $2 million of its payments on MMR's and/or Fluor's behalf, the Court has significant doubt that Westchester and Great American will be able to prove that Liberty Mutual intended its entire payment of $5 million to be on MMR's behalf.  Nonetheless, Westchester and Great American have cited sufficient evidence in support of that contention to get past a motion for summary judgment.  At this point, the allocation of payments in the Joseph settlement is a factual issue to be resolved at trial.

### 3. Subrogation

Liberty Mutual argues that it is entitled to subrogate to Fluor and McLin's right to indemnity from Westchester and Great American, via either conventional or legal subrogation.  The rule governing conventional subrogation under Louisiana law provides that "[a]n obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent."  La. Civ. Code art. 1827.  This provision also notes that such subrogation is subject to Louisiana rules governing assignment of rights.  *Id.*

Liberty Mutual argues that conventional subrogation applies in this case because Liberty Mutual (the third person) paid a portion of the Joseph and Mabry settlements on behalf of Fluor and McLin (the obligees).  Furthermore, in the Receipt and Release Agreement, Fluor expressly assigned to Liberty Mutual its claim for indemnification against Westchester and Great

American. (Ex. K to Pl.'s Mot. Summ. J., Rec. Doc. 284-12 at ¶ 3(D)(4)). Liberty Mutual argues that this unambiguous language is sufficient to satisfy the requirements of conventional subrogation.

Westchester and Great American acknowledge that Fluor assigned its indemnification claim to Liberty Mutual in the Receipt and Release Agreement. However, Westchester and Great American argue that because Fluor paid nothing, Liberty Mutual is unable to recover on Fluor's behalf. They emphasize that the agreements among the insurers created no new rights, and that "the subrogated insurer acquires no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor." *Bailsco Blades & Casting, Inc. v. Fireman's Fund Ins. Co.*, 737 So.2d 164, 167 (La. Ct. App. 1999) (citing *Travelers Ins. Co. v. Impastato*, 607 So.2d 722 (La. Ct. App. 1992)). In support of this position, Westchester and Great American cite *Mid-Continent Ins. Co. v. Liberty Mutual Ins. Co.*, 236 S.W.3d 765 (Tex. 2012), a case that also involved a coverage dispute between insurers. In that case, the court found that once the insured had recovered the full amount of its loss, the insured has no further rights against the insurers who have not contributed to its recovery. *Id.* at 775-76.

Liberty Mutual replies with two main points. First, Liberty Mutual argues that the parties expressly waived "any defenses to the other parties ability to assert, pursue, and potentially recover . . . to the extent the claims arise out of any assignment and/or subrogation from Fluor." (Receipt and Release Agreement, Ex. K to Pl.'s Mot. Summ. J., Rec. Doc. 284-12 at ¶ 3(F)). Second, Liberty Mutual distinguishes *Mid-Continent* from the present case. Liberty Mutual emphasizes that *Mid-Continent* was a Texas case and also cites Fifth Circuit precedent stating that *Mid-Continent's* holding was narrow and confined to the facts of that case; particularly

13

significant was the fact that in *Mid-Continent*, the two primary co-insurers did not dispute coverage of the loss. *Continental Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 86 (5th Cir. 2012) (citations omitted); *see also Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 307 (5th Cir. 2010) ("*Mid-Continent* does not bar contractual subrogation simply because the insured is fully indemnified.").

The Court agrees with Liberty Mutual and declines to hold that *Mid-Continent* is applicable in the present case, particular in light of the Fifth Circuit's holdings confining that case to its facts. Furthermore, the Court notes that Westchester and Great American's argument misconstrues the logic behind subrogation, which is reserved for circumstances in which one party paid on another's behalf. In other words, the fact that Fluor and McLin did not themselves make the payments is the very reason why subrogation applies in this case. Accordingly, Liberty Mutual is entitled to summary judgment on the issue of whether conventional subrogation applies in this case.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that Liberty Mutual's motion for summary judgment (Rec. Doc. 284) is GRANTED with respect to the issues of indemnity, the allocation of the Mabry settlement, and conventional subrogation, and DENIED with respect to the issue of the allocation of the Joseph settlement.

New Orleans, Louisiana this 13th day of September, 2012.

UNITED STATES DISTRICT JUDGE