UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 08-5166** |
| **VERSUS** | * | |
| | * | **SECTION "L"(3)** |
| **WESTCHESTER FIRE INSURANCE COMPANY, ET AL.** | * | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### PROCEDURAL HISTORY

**A.     Factual Background**

This case arises out of a fire that occurred in a FEMA trailer. On August 25, 2006, a flash fire broke out in Jean Joseph's newly leased FEMA trailer while Ms. Joseph and her friend, Bernard Mabry II, were inside, resulting in severe injuries to Ms. Joseph and the death of Mr. Mabry. Multiple lawsuits were filed in Orleans Parish Civil District Court against Fluor Enterprises, Inc. ("Fluor"), which had supplied the trailers; Keith McLin ("McLin"), the Fluor employee who had performed the lease-in of the trailer; and MMR Constructors, Inc. ("MMR"), which had hauled and installed the trailer. The plaintiffs alleged that the fire occurred because employees of Fluor or MMR had failed to turn off the gas stove inside the trailer and had failed to ensure the proper functioning of the trailer's liquid propane detector before turning the trailer over to Ms. Joseph.

The lawsuits were ultimately resolved outside of court, with the settlement payments funded by both Fluor's and MMR's insurers. Fluor's insurance tower included the two remaining

1

defendants in the case, Westchester Fire Insurance Company and Great American Assurance Company. Plaintiff Liberty Mutual Fire Insurance Company was both the primary and excess insurer for MMR. At the time of the original lawsuits, Fluor also sought coverage under MMR's policy with Liberty Mutual, but that coverage was disputed. The Joseph lawsuit settled for $10 million, with Liberty Mutual contributing $5 million and Fluor's insurers contributing $5 million. Each side waived its right to recover the first $2 million it paid, but reserved certain rights to recover the remaining $3 million from the other upon resolution of the coverage dispute. The Mabry lawsuits settled for a total of $2.75 million, with Liberty Mutual contributing $1.375 million and Fluor's insurers contributing $1.375 million. Those entire payments were made subject to a reservation of rights.

**B.     Procedural History**

While the Joseph and Mabry lawsuits were still pending, Liberty Mutual brought this suit for declaratory relief against Westchester, Great American, and other defendants who have since been dismissed from the case. Liberty Mutual seeks to recover the $4.375 million that it paid to settle the Joseph and Mabry lawsuits. (4th Supp. Am. Compl., Rec. Doc. 149 at 16-17). Westchester and Great American have also filed counterclaims for their portions of the settlement payments. (Rec. Docs. 51, 87).

A trial has already been held on the disputed coverage issue described above. At the time that the Joseph and Mabry lawsuits were settled, Fluor argued that Liberty Mutual owed it coverage under two theories: (1) that MMR owed indemnity to Fluor pursuant to the contract between those parties, and (2) that Fluor was covered as an additional insured under MMR's excess insurance policy. On February 17, 2012, a different section of this Court issued an Order

and Reasons holding that both of these assertions were incorrect. (Rec. Doc. 267).

Following the completion of that trial, Liberty Mutual moved for summary judgment against Great American and Westchester (Rec. Doc. 284), and the case was transferred to this Section of the Court. Liberty Mutual argued that in light of the findings at trial, it was entitled to reimbursement from Great American and Westchester for the portion of the settlement payments as to which it did not waive recovery. Liberty Mutual argued that Fluor and McLin were entitled to indemnity from Great American and Westchester, and that Liberty Mutual was subrogated to Fluor and McLin's contractual rights against those parties. The Court agreed, holding that Liberty Mutual was entitled to recover from Great American and Westchester the amounts it had paid to settle claims on Fluor and McLin's behalf. With respect to the Mabry lawsuit, the Court held that the settlement agreement unambiguously stated that Liberty Mutual had paid to settle claims against Fluor and McLin only. With respect to the Joseph lawsuit, however, the Court held that the settlement agreement was ambiguous on the allocation of Liberty Mutual's payments, and the conflicting extrinsic evidence submitted by the parties presented a genuine issue of material fact to be resolved at trial.

## C. Present Matter

On March 18, 2013, the Court held a bench trial on the single remaining issue in the case: the allocation of the Joseph settlement. The Court has carefully considered the testimony of all of the witnesses and the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court issues the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such, and to the extent that any

conclusion of law constitutes a finding of fact, the Court adopts it as such.

Furthermore, the Court adopts all previous findings of fact listed in the February 17, 2012 Order and Reasons (Rec. Doc. 267) and September 13, 2012 Order and Reasons (Rec. Doc. 321).

## FINDINGS OF FACT

**A.  Background**

**1.  The Parties**

(1)  Liberty Mutual is a citizen of Wisconsin and Massachusetts. (Pre-Trial Order, Rec. Doc. 336 at 19).

(2)  Westchester is a citizen of New York and Pennsylvania. *Id.*

(3)  Great American is a citizen of Ohio. *Id.*

(4)  In July 2005, Fluor contracted with FEMA to provide assistance to individuals after natural disasters. (Feb. 17, 2012 O&R, Rec. Doc. 267 at 5).

(5)  Under the Fluor/FEMA contract, Fluor managed the delivery and installation of FEMA trailers in the aftermath of Hurricanes Katrina and Rita. *Id.* at 1, 5.

(6)  The Fluor/FEMA contract required Fluor to haul and install the trailers to designated locations and to provide separate lease-in services to each individual receiving a trailer. *Id.* at 5, 13.

(7)  Fluor subcontracted with MMR to haul and install the FEMA trailers. *Id.* at 5.

(8)  On September 16, 2005, Fluor and MMR entered into a Blanket Ordering Agreement (BOA) to perform certain work, as specified in the BOA. *Id.*

(9)  Liberty Mutual issued to MMR a commercial general liability ("CGL") policy with a limit of $1 million. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2).

(10)    Liberty Mutual issued to MMR an excess liability policy with a limit of $20 million, in excess of the $1 million CGL policy. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2; Pre-Trial Order, Rec. Doc. 336 at 20).

(11)    CNA issued to Fluor a commercial general liability policy with a $2 million limit. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2; Pre-Trial Order, Rec. Doc. 336 at 20).

(12)    Westchester issued to Fluor an excess policy with a limit of $5 million in excess of the CNA policy. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2).

(13)    Great American issued to Fluor an excess policy with a limit of $3 million, in excess of both the CNA policy and the Westchester policy. *Id.*

### 2.     The Fire

(14)    On August 22, 2006, Keith McLin, an employee of a Fluor subsidiary, performed a lease-in of a FEMA travel trailer leased to Jean Joseph while Ms. Joseph was present. (Feb. 17, 2012 O&R, Rec. Doc. 267 at 13-14).

(15)    During the lease-in, McLin tested the trailer's range and LP gas detector and performed a leak test on the LP gas system. *Id.* at 14.

(16)    MMR had previously hauled and installed Joseph's trailer. *Id.* at 11.

(17)    After July 14, 2006, MMR had no further contact with or duties relating to the Joseph trailer. *Id.* at 13.

(18)    On August 25, 2006, three days after the lease-in, a flash fire occurred in the Joseph trailer while Ms. Joseph and her friend, Bernard Mabry II, were inside. *Id.* at 14.

(19)    Ms. Joseph was severely burned, and Mr. Mabry died as a result of injuries sustained in the fire. *Id.* at 1.

(20) One cause of the fire was that someone turned on the gas knob supplying the trailer's stove and failed to turn it off, allowing gas to accumulate inside the trailer. *Id.* at 15.

(21) The gas was turned on approximately three days before the fire. *Id.* at 16-17.

(22) The fire also occurred because the LP gas detector did not alarm, even though a properly functioning detector would have alarmed before the fire erupted. *Id.* at 18-20.

(23) Nothing in MMR's scope of work was a but-for cause of the injuries to Ms. Joseph or Mr. Mabry. *Id.* at 27.

### 3. The Joseph and Mabry Lawsuits

(24) Following the fire, several plaintiffs filed suit against Fluor, McLin, MMR, and other defendants in Civil District Court in Orleans Parish. (Feb. 17, 2012 O&R, Rec. Doc. 267 at 1; Joint Ex. 28).

(25) Some of the plaintiffs alleged that McLin was an employee of MMR, not Fluor. (Joint Ex. 28, Duplicate Third Supp. & Am. Pet. at ¶ IIA).

(26) Ms. Joseph's claims for economic damages alone were nearly $10 million. (Joint Ex. 15 at 14).

(27) Fluor and McLin tendered the Joseph and Mabry suits to Liberty Mutual, claiming that (1) they were additional insureds under Liberty Mutual's policies issued to MMR, and (2) Liberty Mutual owed coverage for MMR's promise to defend and indemnify Fluor in the BOA. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2; Pre-Trial Order, Rec. Doc. 336 at 20).

(28) Liberty Mutual agreed to pay for Fluor and McLin's defense in the lawsuits, subject to a full reservation of rights. (Pre-Trial Order, Rec. Doc. 336 at 19).

(29)     The Joseph lawsuit settled for $10 million. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2; Joint Ex. 9).

(30)     To fund the Joseph settlement, CNA contributed $2 million, Westchester contributed $3 million, and Liberty Mutual contributed $5 million. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2).

(31)     On December 30, 2008, counsel for Fluor/McLin, its insurers, and Liberty Mutual signed the Confidential Settlement Agreement, hereinafter referred to as the "Joseph 12/30/08 agreement." (Joint Ex. 9; Liberty Ex. 16).

(32)     As part of the Joseph 12/30/08 agreement, Westchester and Liberty Mutual reserved certain rights to recover from each other $3 million of the Joseph settlement payments. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 2-3).

(33)     Liberty Mutual waived its right to recover the remaining $2 million that it paid as part of the Joseph settlement. *Id.*

(34)     The Mabry lawsuits settled for a total of $2.75 million. *Id.* at 3.

(35)     Liberty Mutual and Westchester each contributed $1.375 million to fund the Mabry settlement. *Id.*

(36)     Following the settlement of the Mabry lawsuit, counsel for Fluor/McLin, its insurers, MMR, and Liberty Mutual signed a Receipt and Release Agreement, hereinafter referred to as the "Final Agreement." *Id.*

(37)     The Final Agreement encompassed both the Joseph settlement and the Mabry settlement. *Id.*

B.	**Factual Findings from the March 18, 2013 Trial**

  1.	**Liberty Mutual's Investigation of the Joseph Lawsuit**

(38)	Liberty Mutual assigned adjuster Joseph Covert to handle Fluor's and McLin's claims for coverage in the Joseph and Mabry lawsuits under Liberty Mutual's excess policy issued to MMR. (Covert Test.).

(39)	Liberty Mutual assigned adjuster Sam Cooley to handle Fluor's and McLin's claims for coverage in the Joseph and Mabry lawsuits under Liberty Mutual's CGL policy issued to MMR. *Id.*

(40)	Liberty Mutual assigned adjuster Doug Dickus to handle MMR's claims for coverage in the Joseph and Mabry lawsuits under Liberty Mutual's excess policy issued to MMR. *Id.*

(41)	Liberty Mutual assigned adjuster Janeen Young to handle MMR's claims for coverage in the Joseph and Mabry lawsuits under Liberty Mutual's CGL policy issued to MMR. *Id.*

(42)	Due to the potential conflict of interest among Fluor/McLin and MMR, Liberty Mutual set up a "Chinese wall" between the Fluor/McLin adjusters and the MMR adjusters, meaning that the two sets of adjusters had no contact with each other. *Id.*

(43)	All experts except Fluor and McLin's agreed that the gas in the trailer had been left on for three days, which coincided exactly with the timing of McLin's lease-in. (Joint Ex. 15 at 6).

(44)	Ms. Joseph specifically identified the "Fluor employee" as the person who left the gas on. *Id.* at 2.

(45)	Accordingly, Joseph Covert concluded that Fluor and McLin had significant exposure in the Joseph lawsuit. (Covert Test.).

(46)	Kevin Ainsworth and William Schuette represented Fluor and McLin in the Joseph and Mabry lawsuits. (Ainsworth Test.).

(47)	Mr. Ainsworth prepared the November 3, 2008 report and sent it to Sam Cooley. (Joint Ex. 15; Ainsworth Test.).

(48)	Kevin Ainsworth's report states that Fluor and McLin had combined exposure of 25-50%, whereas MMR had exposure of 0-5%. (Joint Ex. 15 at 9).

(49)	Joseph Covert agreed with that conclusion, except that he believed MMR's liability to be 0% rather than 5%. (Covert Test.).

(50)	E. Phelps Gay served as counsel for MMR in the Joseph and Mabry lawsuits. (Gay Test.).

(51)	Mr. Gay believed MMR's liability, if any, was "remote." *Id.*

### 2. The Joseph Settlement Negotiations

(52)	The Joseph plaintiffs were represented by Christopher Bruno, who was elected to a Judgeship in Civil District Court in 2008 and intended to take the bench on January 1, 2009. (Ainsworth Test.).

(53)	Because of Mr. Bruno's ascendency to the bench, any settlement of the Joseph lawsuit had to be completed by December 30, 2008. (Liberty Exs. 2, 8, 9; Ainsworth Test.).

(54)	Around December 5, 2008, the Joseph plaintiffs offered to settle their case for $10 million. (Liberty Ex. 2).

(55)	On December 12, 2008, counsel for Fluor and McLin wrote to Westchester and Great American, stating that the Joseph plaintiffs' $10 million settlement offer "represents a very reasonable settlement opportunity within the limits of its liability coverage, which

9

would allow Fluor and McLin to settle Jean Joseph's very serious claims." *Id.*

(56) Counsel for Fluor and McLin also wrote that "Fluor believes that it is imperative that its carriers immediately attempt to conclude a prompt settlement of Jean Joseph's claims against Fluor and Mr. McClin [*sic*]." *Id.*

(57) On December 17, 2008, Joseph Covert requested $4 million in authority from Liberty Mutual under the excess policy to settle the claims against Fluor and McLin. (Liberty Ex. 3; Covert Test.).

(58) Mr. Covert's authority request states: "The primary exposure for coverage under our policy is for Flour's [*sic*] liability in this matter under the contractual and additional insured obligations owed by MMR to Flour [*sic*] corporation under the contract." (Liberty Ex. 3).

(59) Mr. Covert's authority request further states: "MMR Group has minimal or no liability." *Id.*

(60) On December 19, 2008, Liberty Mutual granted the request. *Id.*

(61) The MMR adjusters, Ms. Young and Mr. Dickus, were not involved in the settlement negotiations and had no authority to settle. (Covert Test.).

(62) E. Phelps Gay, counsel for MMR, was also not involved in the negotiations and had no authority to settle. (Gay Test.).

(63) On December 19, 2008, counsel for Fluor and McLin asked Liberty Mutual to contribute to a $10 million settlement of the Joseph claims, specifically, by contributing $1 million on behalf of MMR, another $2 million (which would be matched by CNA) with no reservation, and another $2.5 million (which would be matched by Westchester) with a

full reservation of rights to litigate which policy provided primary coverage which policy provided primary coverage to Fluor and McLin. (Liberty Exs. 4, 5, 7; Covert Test.).

(64) Liberty Mutual rejected this offer and told Fluor and McLin that it would not contribute for MMR. (Liberty Ex. 4; Covert Test.).

(65) From that point on, the parties understood that any settlement payment by Liberty Mutual would be exclusively on behalf of Fluor and McLin. (Covert Test.).

(66) From December 19, 2008 to December 30, 2008, neither MMR's counsel nor Liberty Mutual's MMR adjusters participated in settlement negotiations. (Joint Ex. 24; Liberty Exs. 6, 8-11; Covert Test.).

(67) By December 22, 2008, Mr. Ainsworth proposed instead that Liberty Mutual's and Fluor and McLin's insurers fund the $10 million settlement "50/50." (Liberty Ex. 6).

(68) On December 22, 2008, Mr. Schuette wrote to Liberty Mutual, Westchester, and Great American: "[I]t is imperative that Fluor immediately accept the Joseph settlement demand of $10,000,000. This is an extremely dangerous claim, and Fluor's potential exposure is much greater than this favorable demand." (Liberty Ex. 8).

(69) Mr. Schuette's letter further stated: "How ever [*sic*] its carriers wish to fund the $10,000,000 settlement demand, please let the message from Fluor be loud and clear: **Get the Joseph portion of this case against Fluor and Keith McLin settled – now.**" *Id.*

(70) On December 29, 2008, counsel for the Joseph plaintiffs wrote to counsel for Fluor and McLin, stating that the $10 million demand would expire at 5:00 p.m. on Tuesday, December 30, 2008. (Liberty Ex. 9).

(71) On December 30, 2008, at 12:04 p.m., Mr. Schuette wrote to Liberty Mutual,

11

Westchester, and Great American: "It is imperative that Fluor accept the Joseph settlement demand of $10,000,000 **today**. How ever [*sic*] its carriers wish to fund the $10,000,000 settlement demand, please let the message from Fluor be loud and clear: **Get the Joseph portion of this case against Fluor and Keith McLin settled – TODAY.**" (Liberty Ex. 10).

(72) On December 30, 2008, at 12:21 p.m., counsel for Fluor and McLin wrote in an email to Liberty Mutual: "Fluor's position is that the Joseph claim needs to be settled. What Liberty, CNA, [Westchester] and Great American decide is between you – but the Joseph matter needs to be settled today." (Liberty Ex. 11).

(73) Mr. Covert reviewed all of these letters from Fluor and McLin's counsel. (Covert Test.).

(74) These letters were not sent to MMR or to Mr. Gay. (Liberty Exs. 8, 10, 11).

(75) Mr. Covert understood that these letters were demands to fund a settlement for Fluor and McLin alone. (Covert Test.).

(76) Mr. Ainsworth understood that the dispute concerning which set of carriers owed primary coverage was reserved for another day. (Ainsworth Test.).

(77) Additionally, Mr. Ainsworth understood that whichever carrier prevailed in the coverage dispute would recover its full $3 million contribution reserved as part of the Joseph settlement. *Id.*

(78) On December 30, 2008, Fluor, CNA, Westchester, and Liberty Mutual agreed to accept the Joseph plaintiffs' $10 million settlement demand. (Joint Ex. 9; Liberty Exs. 15, 16).

(79) On December 31, 2008, Mr. Ainsworth wrote to Mr. Bruno to accept the settlement demand, stating: "On behalf of Fluor Enterprises, Inc., Keith McLin and their respective

insurers, this letter will serve as our acceptance of that offer." (Liberty Ex. 17).

(80) This letter was not sent to MMR or its counsel. *Id.*

(81) Mr. Ainsworth did not accept the demand on MMR's behalf, nor did he have authority to do so. (Ainsworth Test.).

### 3. The Joseph 12/30/08 Agreement

(82) Liberty Mutual drafted the initial version of the Joseph 12/30/08 Agreement. (Pre-Trial Order, Rec. Doc. 336 at 21).

(83) Liberty Mutual's draft of that agreement included the language stating that the parties would settle the claims "on behalf of Fluor and/or MMR Group, Inc." *Id.*

(84) Liberty Mutual's draft also included the language stating that Liberty Mutual would fund $5 million of the settlement "as the primary and excess carrier for MMR, and as the alleged additional insurer of Fluor." *Id.*

(85) On December 30, 2008 at 1:48 p.m., counsel for Liberty Mutual emailed its draft of the Joseph 12/30/08 Agreement to Fluor and its insurers. (Joint Ex. 6).

(86) Great American requested that one sentence be added to the draft: "Moreover, nothing in this agreement shall be construed to create any rights or claims which do not otherwise exist except as specifically provided herein." (Pre-Trial Order, Rec. Doc. 336 at 21).

(87) A further change was made to the draft to add CNA as a signatory and to add a case caption. (Joint Ex. 7; Liberty Ex. 14).

(88) Counsel for Fluor and McLin requested the addition of the Vernadine Mabry case caption. (Liberty Ex. 14).

(89) Additionally, Westchester revised the draft to remove any reservation with respect to

defense costs. (Liberty Ex. 15; Joint Ex. 8).

(90) Following these revisions, the parties executed the Joseph 12/30/08 Agreement. (Liberty Ex. 16).

(91) MMR was not a party to the Joseph 12/30/08 Agreement and did not sign it. (Joint Ex. 9).

(92) The parties intended for the Joseph 12/30/08 Agreement to be supplemented with a "more substantial agreement to add me[a]t to the bones" at a later date. (Liberty Ex. 12).

(93) Counsel for Great American stated specifically that it was "highly likely, but not certain, that this will not be the final agreement as to the funding and recovery issues." (Liberty Ex. 13).

(94) Counsel for Great American also specifically stated that under the Joseph 12/30/08 Agreement, "Great American has potential exposure to Liberty for $1 million if Liberty prevails on the indemnity issues." *Id.*

### 4. Payment of the Joseph Settlement

(95) As described above, Liberty Mutual contributed $5 million toward the Joseph settlement. (Joint Ex. 9).

(96) Liberty Mutual's payment consisted of the $1 million limit of its CGL policy and $4 million under its excess policy. (Covert Test.).

(97) The $1 million check was issued from Liberty Mutual's MMR CGL claim file. (Covert Test.; Joint Exs. 20, 22).

(98) The $1 million payment had previously been authorized on the MMR claim file because of the initial allegations that McLin was an employee of MMR, rather than Fluor. (Covert Test.).

(99)   It would have taken approximately 15 seconds for the $1 million authorization to be transferred from the MMR claim file to the Fluor/McLin claim file. *Id.*

(100)  Nonetheless, that transfer never occurred. *Id.*

(101)  It was not possible to set a separate reserve on the Fluor primary claim file, since the policy limit of $1 million had already been exhausted on the MMR primary claim file. *Id.*

(102)  The $4 million check was issued from Liberty Mutual's Fluor/McLin excess claim file. (Liberty Ex. 19; Covert Test.).

### 5. The Final Agreement

(103)  The Final Agreement added the "me[a]t" to the Joseph 12/30/08 Agreement. (Liberty Ex. 12, 18).

(104)  The Final Agreement states: "The plaintiffs' claims against Fluor asserted in the Joseph Lawsuit were previously settled." (Liberty Ex. 18 at 2).

(105)  In the Final Agreement, Liberty Mutual reserved the right to assert and pursue a claim against Westchester and Great American for "reimbursement of indemnity payments of $3,000,000 paid by Liberty Mutual in connection with the Joseph Settlement[.]" *Id.* at ¶ 3(A)(5).

(106)  In the Final Agreement, Liberty Mutual reserved its rights against Fluor to the extent necessary to pursue payment from Fluor's insurers. *Id.* at ¶ 3(D)(4).

(107)  In the Final Agreement, the parties agreed to "waive any defenses to the other parties['] ability to assert, pursue and potentially recover the amounts referenced above to the extent the claims arise out of any assignment and/or subrogation from Fluor as agreed in this Agreement." *Id.* at ¶ 3(F).

(108) In the Final Agreement, Fluor agreed to assign to Liberty Mutual a "[c]laim against Westchester [and] Great American . . . for indemnification for payments made by Liberty Mutual in the Joseph Settlement[.]" *Id.* at ¶ 3(D).

(109) The Final Agreement also provided that in the case of ambiguity, the Final Agreement should not "be construed by reference to any doctrine or statute calling for ambiguities to be construed against the drafter of the document." *Id.* at ¶ 6.

(110) The Final Agreement also stated that it "constitutes the entire agreement of the Parties hereto and supersedes all prior and contemporaneous agreements and understandings and any and all prior correspondence, conversations, or memoranda are merged herein and are replaced hereby." *Id.* at ¶ 11.

### 6. Allocation

(111) The $4 million check was paid by Liberty Mutual on behalf of Fluor and McLin only, not on behalf of MMR.

(112) The $1 million check was paid by Liberty Mutual on behalf of Fluor and McLin only, not on behalf of MMR.

## CONCLUSIONS OF LAW

(1) The Court has jurisdiction over the case under 28 U.S.C. § 1332.

(2) As the Court previously concluded, Liberty Mutual is entitled to recover from Fluor and McLin's insurers only the amounts it paid on behalf of Fluor and McLin. (Sept. 19, 2012 O&R, Rec. Doc. 321 at 7-8).

(3) As the Court also previously concluded, the Joseph 12/30/08 Agreement is ambiguous with respect to allocation. *Id.* at 12.

(4) Because the parties to the Joseph 12/30/08 Agreement were sophisticated entities with relatively equal bargaining power, the rule requiring ambiguity to be construed against the drafter does not apply. *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1207 (5th Cir. 1991) (citing *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 n.4 (6th Cir. 1990)).

(5) That rule also does not apply because the Joseph 12/30/08 Agreement was the result of arm's length negotiations, with modifications requested by multiple parties and incorporated into the final version. *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 441 (5th Cir. 2002).

(6) Liberty Mutual did not fail to provide a necessary explanation within the Joseph 12/30/08 Agreement, nor was Liberty Mutual negligent or otherwise at fault for the ambiguity in the Joseph 12/30/08 Agreement. Accordingly, Louisiana Civil Code Article 2057 does not apply.

(7) The Court must consider the extrinsic evidence offered by the parties in order to interpret the Joseph 12/30/08 Agreement. *Lomark, Inc. v. Lavignebaker Petroleum, L.L.C.*, No. 12-389, 2013 WL 646398, at *3 (La. App. 5 Cir. 2/21/13); *New Orleans Jazz & Heritage Found., Inc. v. Kirksey*, 2009-1433 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 401.

(8) The parties did not intend for the Joseph 12/30/08 Agreement to be the final agreement. The Final Agreement unambiguously states that the parties previously settled "the plaintiffs' claims against Fluor asserted in the Joseph lawsuit." (Liberty Ex. 18 at 2). Thus, the Final Agreement rescinded in part and modified the Joseph 12/30/08 Agreement with respect to the issue of allocation. *E.g.*, *Breaux v. Halliburton Energy*

17

*Servs.*, 562 F.3d 358, 366 (5th Cir. 2009) (citing 29 Williston on Contracts § 73:17 (4th ed. 2003)). Specifically, the Final Agreement clarified that Liberty Mutual paid to settle Ms. Joseph's claims against Fluor and McLin.

(9) Alternatively, to the extent that the Final Agreement does not modify the Joseph 12/30/08 Agreement, the extrinsic evidence introduced at trial demonstrates that Liberty Mutual made its entire $5 million payment to settle claims against Fluor and McLin only.

(10) Based on the Court's finding that Liberty Mutual paid $3 million on behalf of Fluor and McLin only in connection with the settlement of the Joseph lawsuit, the Court concludes that Liberty Mutual is entitled to recover $3 million from Westchester and Great American. Specifically, Liberty Mutual is entitled to recover from Westchester its remaining policy limits of $625,000, and from Great American the remaining $2,375,000 of the $3 million payment.

(11) Based on the Court's finding in the September 19, 2012 Order and Reasons that Liberty Mutual paid $1.375 million on behalf of Fluor and McLin only in connection with the settlement of the Mabry lawsuits, the Court concludes that Liberty Mutual is entitled to recover Great American's remaining policy limits of $625,000.

(12) Because Westchester should have paid $625,000 in connection with the Joseph settlement on the date of the Joseph 12/30/08 Agreement, Westchester owes prejudgment interest on the $625,000 judgment running from December 30, 2008. *See, e.g.*, *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1499-1500 (5th Cir. 1992).

(13) Because Great American should have paid $2,375,000 in connection with the Joseph settlement on the date of the Joseph 12/30/08 Agreement, Great American owes

prejudgment interest on the $2,375,000 judgment running from December 30, 2008.

(14)   Because Great American should have paid $125,000 in connection with the Bernard Mabry, II settlement, which was funded on or about February 24, 2010, Great American owes prejudgment interest on the $125,000 judgment running from February 24, 2010.

(15)   Because Great American should have paid $500,000 (its remaining policy limits) in connection with the Vernadine Mabry settlement, which was funded on or about May 6, 2010, Great American owes prejudgment interest on the $500,000 judgment running from May 6, 2010.

New Orleans, Louisiana this 4th day of April, 2013.

_____
UNITED STATES DISTRICT JUDGE